# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Jessica Austin, Peter Hoffman, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

Chobani, LLC,

Defendant

7:21-cv-05949

Class Action Complaint

Jury Trial Demanded

Plaintiffs allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.     Chobani, LLC ("defendant") manufactures, labels, markets and sells yogurt products represented as "Fair Trade Certified Dairy" ("Product").




## I.    DAIRY INDUSTRY IN UPSTATE NEW YORK

2.     In 2017, nonprofit worker groups documented the exploitation of immigrant workers in the dairy industry throughout upstate New York.

3.     The report, "Milked: Immigrant Dairy Farmworkers in NY State," detailed "dangerous conditions, low pay, lack of common workplace protections, inadequate legal

protections for farmworkers, and marginalization and isolation due to immigration status."[1]

4.      The report was "the basis for an extended campaign calling on Chobani to address conditions in their supply chains."

5.      According to one worker:

We sat at the table with Chobani multiple times and delivered a memo asking that they recognize and support the right of all workers in their chain to unionize. But Chobani hasn't listened to the workers, instead they created their "Milk Matters" campaign without the voices of workers. .[2]

6.      Chobani reportedly refused "to engage with workers and their organizing and instead [to] pursue[d] Fair Trade USA for a corporate social responsibility partnership."

7.      Chobani describes this certification inside every product.



Chobani is the first Fair Trade USA dairy company, crafting the first Fair Trade Certified dairy products in the country. Eating this yogurt empowers dairy farmers, supports safe working conditions and animal care, and provides extra income to the people who helped make this product.

8.      Chobani touts its commitment to "Fair Trade" in its print, digital and other advertisements.

---

[1] Carly Fox, Rebecca Fuentes, Fabiola Ortiz Valdez, Gretchen Purser, and Kathleen Sexsmith. 2017. "Milked: Immigrant Dairy Farmworkers in New York State." A report by the Workers' Center of Central New York and the Worker Justice Center of New York.
[2] Fair World Project, Label Before Labor: Fair Trade USA's Dairy Label Fails Workers, May 2021.



9.      Fair trade is understood by consumers as a system of exchange which benefits marginalized producers and workers to help them move from a position of vulnerability to economic self-sufficiency.

10.     According to Fair Trade USA and independent research, consumers are more likely to purchase products, and pay more for them, when assured they are made in ways that respects and values workers, the environment, and animals.

## II.    FAIR TRADE DAIRY CHALLENGED BY WORKER GROUPS

11.     The Fair Trade Dairy project has been challenged by nonprofit groups, such as Fair World Project, Migrant Justice and Workers Center of Central New York.

12.     They described the Fair Trade Certified Dairy standard as made through "a sham process" and "an exercise that doesn't reflect the needs and values of workers."

13.     According to these groups, "Fair Trade USA does not have any requirements for

worker organizations or unions to be represented or have a majority voice on either their standards-setting council or governance or advisory board."

14.    Though Fair Trade USA is a member of the international body ISEAL, "their flawed development process does not adhere to ISEAL recommendations in several key regards," centered around lack of input from stakeholders.

15.    According to reports, even after the "Fair Trade Certified Dairy" label began appearing on Chobani products in spring 2021, a final dairy standard had not been released.

## III.   TYPICAL FAIR TRADE STANDARDS INAPPLICABLE TO DAIRY FARMS

16.    The Fair Trade Certified Dairy program has been criticized for attempting to apply a "one-size-fits all approach to their agricultural standard."

17.    The Milked report estimates that 80% of workers on New York dairy farms live and work on farms with too few workers to fall under Occupational Safety and Health Administration (OSHA) jurisdiction.

18.    Farms employing fewer than 6 workers can be certified with the following items listed as a "best practice," not a mandatory requirement:

- Pay slips or written contracts;

- Access to first aid supplies (required only after year 3 of certification) or medical care for workplace injuries;

- Safe, well-maintained buildings, fire escapes, etc.;

- Documentation of safety instructions and recordkeeping of workplace accidents;

- Limits to overtime;

- Know your rights under Fair Trade USA & ILO standards trainings; policy & training on sexual harassment;

- Grievance policy & procedure; and

- Non-retaliation for using grievance procedure.

## IV.  LACK OF ENFORCEMENT ON STANDARDS

19.    Fair Trade Certified Dairy standards have been challenged as filled with "loopholes that leave out the most at-risk workers on dairy farms."

20.    The Dairy amendment to the Fair Trade USA's Agriculture Production Standard (APS) has been criticized as failing to remedy this issue, by emphasizing the "at-will" employment status of farm workers.

21.    The ability to fire workers for no cause – while lawful – "has been highlighted by labor advocates in the U.S. as an obstacle to workers' organizing."

22.    Other fair-trade groups "explicitly require employers to document reasons for termination, and the Milk with Dignity program spells out that just cause is required for termination and other disciplinary actions."

23.    This is especially important in the context of the largely immigrant workforce, who are often reluctant to speak up due to their legal status.

24.    Even the "Fair Trade USA's grievance process is flawed," since there are "merely a 'best practice' for workers on farms with fewer than six workers."

25.    Defendant attempts to "fairwash" its concern for workers throughout its supply chain.

26.    However, legitimate third-party organizations exist for the protection of rights of dairy workers.

27.    One of these groups, "Milk With Dignity," is a leader in representing marginalized dairy workers.

28.     Defendant could have supported "Milk With Dignity," but decided to use a watered-down standard which fails to offer the same level of worker and environmental protections.

## V.     CONCLUSION

29.     Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of a product or service, or its production process, relative to itself and other comparable products or alternatives.

30.     The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

31.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

32.     Had Plaintiffs and proposed class members known the truth of the Fair Trade Certified Dairy – that it failed to assure a minimum of basic worker protections, they would not have bought the Product or would have paid less for it.

33.     The Product is sold for a price premium compared to other similar products, no less than $3.99 per 32 ounces, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

34.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

35.     Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

36.     Plaintiff Jessica Austin is a citizen of Florida.

37.     Defendant Chobani, LLC is a Delaware limited liability company with a principal

place of business in Norwich, Chenango County, New York.

38.   Defendant's members are citizens of New York.

39.   Plaintiff Austin is a citizen of a different state than at least one of Defendant's members.

40.   Venue is in this district because plaintiff Hoffman resides in this district and a substantial part of the events or omissions giving rise to the claims occurred here, such as plaintiff Hoffman's purchase of the Product.

<u>Parties</u>

41.   Plaintiff Jessica Austin is a citizen of Jacksonville, Duval County, Florida.

42.   Plaintiff Peter Hoffman is a citizen of Mount Vernon, Westchester County, New York.

43.   Defendant Chobani, LLC, is a Delaware limited liability company with a principal place of business in Norwich, New York, Chenango County.

44.   Defendant is the largest producer of yogurts in the country.

45.   Defendant's innovative products have benefitted consumers seeking new kinds of yogurt.

46.   Defendant's actions can benefit large groups of people, because it is one of the largest users of milk in the United States.

47.   Plaintiff Austin bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, from stores including Walmart, 4250 Philips Hwy Jacksonville, FL 32207, between June and July 2021, among other times.

48.   Plaintiff Hoffman bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, from stores including ShopRite, 13 City Pl, White

Plains, NY 10601, in or around June 2021, among other times.

49. Plaintiffs saw the front label that said, "Fair Trade Certified Dairy," with the logo, and believed this meant workers were provided minimum protections which were guaranteed and were not "best practices."

50. Plaintiffs bought the Product at or exceeding the above-referenced price.

51. Plaintiffs relied on the representations identified here.

52. Plaintiffs would not have purchased the Product if they knew the representations were false and misleading.

53. Plaintiffs chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

54. The Product was worth less than what Plaintiffs paid and they would not have paid as much absent Defendant's false and misleading statements and omissions.

55. Plaintiffs intend to, seeks to, and will purchase the Product again when they can do so with the assurance that Product's representations are consistent with its composition.

<u>Class Allegations</u>

56. The class will consist of Florida and New York residents who purchased the Product during the statutes of limitations for each cause of action alleged with the alleged misrepresentations.

57. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

58. Plaintiffs' claims and basis for relief are typical to other members because all were

subjected to the same unfair and deceptive representations and actions.

59.   Plaintiffs are adequate representative because their interests do not conflict with other members.

60.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

61.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

62.   Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

63.   Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>Florida Deceptive and Unfair Trade Practices Act
("FDUTPA")</u>

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

<u>(Consumer Protection Statute)</u>

64.   Plaintiffs incorporate by reference all preceding paragraphs.

65.   Plaintiffs and class members desired to purchase a product which was certified to ensure a minimum of worker protections.

66.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

67.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

68.   Plaintiffs relied on the representations.

69.   Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

70.     The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it was certified to ensure a minimum of worker protections.

71.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

72.     This duty is based on Defendant's outsized role in the market for this type of Product.

73.     Plaintiffs provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

74.     Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

75.     The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

76.     Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

77.     Defendant had a duty to truthfully represent the Product, which it breached.

78.     This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

79.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known brand.

80.     Plaintiffs and class members reasonably and justifiably relied on these negligent

misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

81.    Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

82.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was certified to ensure a minimum of worker protections

83.    Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

84.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

   **WHEREFORE**, Plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages, statutory damages pursuant to any statutory claims and

interest pursuant to the common law and other statutory claims;

5.   Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6.   Other and further relief as the Court deems just and proper.

Dated:   July 12, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com